TESCH, by Guardian *ad litem,* and another, Plaintiffs and
Appellants, vs. WISCONSIN PUBLIC SERVICE CORPORA-
TION and another, Defendants and Respondents: WIRTZ
and others, Defendants and Appellants.

*October 9—November 5, 1957.*

132

134

For the plaintiffs-appellants there were briefs by *Hoffmann, Trembath & Gullickson* of Wausau, and oral argument by *R. C. Trembath.*

For the defendants-appellants there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Paul D. Hilton* of counsel, all of Wausau, and oral argument by *F. W. Genrich.*

For the defendants-respondents there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham.*

FAIRCHILD, J.  There was evidence that Lepak did not see Tesch, or at least pay any attention to him, and that he did not blow his horn.  We agree with the trial court that neither of those failures could have constituted causal negligence in producing this collision.  The horn would have served only as a warning to Schmidt, and Lepak's duties with respect to Wirtz were no greater by reason of the approach of Tesch.

The more important questions, on which we also agree with the trial court, are:

1. Whether Lepak could have been found negligent with respect to lookout to the rear, or management and control and,

2. Whether he could have been found to have suddenly decreased his speed without giving the signal required by law.

Appellants correctly point out that in our consideration of this case they are entitled to the most favorable view of the evidence. They urge that if Lepak was 444 feet from the Schmidt car, he was not yet confronted with an emergency; he had 300 feet more than the 125 feet he required for a complete stop. The jury could have found that Lepak, without danger, had time to glance in his mirror and observe the GMC unit and to give a signal by hand and arm or by light application of his brake for some distance before any sudden decrease in speed or stop became necessary to avoid a collision with Schmidt. Did Lepak have a duty to do these things?

In *Thoresen v. Grything* (1953), 264 Wis. 487, 59 N. W. (2d) 682, it was held that a driver had no duty to the driver behind him except to use the road in the usual way, in keeping with the laws of the road, and that until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner. In *State v. Pohl* (1954), 266 Wis. 23, 30, 62 N. W. (2d) 556, 63 N. W. (2d) 711, it was stated that the rule of the *Thoresen Case* "requires that we hold that the question as to his lookout should not have been submitted."

Standing by these decisions, we hold that there was no duty on Lepak's part to ascertain whether a vehicle was following him before decreasing his speed. He knew that the GMC unit had been close to him at a previous occasion

and he knew that ½ mile back he had seen the unit about a block behind him. We are urged to hold that this knowledge by Lepak gave rise to a duty on his part to observe the GMC unit before decreasing his speed, but we conclude that he had no greater duty to find out about the presence or closeness of this unit which he had observed previously than he had with reference to any other vehicle which might have been following him.

Secs. 85.175 (3) and 85.176, Stats., provide:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in sections 85.176 and 85.177 to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." (Sec. 85.175 (3).)

"Any stop or turn signal when required herein shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device of a type approved by the department, but when a vehicle is so constructed or loaded that a hand-and-arm signal would not be visible both to the front and rear of such vehicle then said signals must be given by such lamp or lamps or signal device." (Sec. 85.176.)

Appellants contend that Lepak had an opportunity to give a signal substantially in advance of any sudden decrease in speed, and that when the opportunity exists, the statutes so require. That interpretation of a similar statute was made in *United States v. First Sec. Bank of Utah* (10th Cir. 1953), 208 Fed. (2d) 424.

This court has expressed a different view. In *Wodill v. Sullivan* (1955), 270 Wis. 591, 598, 72 N. W. (2d) 396, it was said, "When a vehicle is equipped with brake-activated stop lights as required by statute, as soon as pressure is applied to the brakes, a signal automatically occurs indicating the driver's intention to stop or diminish speed. No other signal is required by law." The statement appears to have been unnecessary to the decision, but nevertheless, a deliber-

ate and considered expression of a rule. We adhere to it. Since the *Wodill Case,* the legislature has revised and recodified the law relating to motor vehicles. Ch. 260, Laws of 1957. Sec. 85.175 (3), Stats., remained in almost identical language and is now sec. 346.34 (2), Stats. 1957. This is some indication that the interpretation of the statute in the *Wodill* decision was acceptable to the legislature, as well as to the drafters of the code.

Lepak applied his brakes for the purpose of avoiding the danger anticipated from the Schmidt car. Appellants are in effect charging him with an excess of caution in meeting a hazard he foresaw on the road ahead of him. Obviously this is not the case of a driver who suddenly decreases his speed for some reason irrelevant to his use of the highway. Whether such a driver has a duty to look out for vehicles following him and to give a greater warning of his intentions than is required by statute will be a question for decision in a proper case.

*By the Court.*—Judgment affirmed.