McFARLIN and others, Plaintiffs and Appellants, v. HEWITT and others, Defendants: KONITZER and others, Defendants and Respondents.

*November 3—December 2, 1958.*

For the appellants there were briefs by *Nathaniel D. Rothstein, Roy O. Conen,* and *Jack E. Keyes,* all of Milwaukee, and oral argument by *Mr. Rothstein* and *Mr. Conen.*

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *A. W. Kivett* and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. A. W. Kivett* and *Mr. Lewis.*

MARTIN, C. J. In cases where a new trial has been granted in the interests of justice under sec. 270.49 (2), Stats., this court does not look for evidence to sustain the jury findings, but it seeks to determine whether the trial court abused its discretion in ordering a new trial. It seeks reasons to sustain the finding of the trial judge. In jury cases where the jury verdict has had the approval of the trial judge this court will uphold the verdict if sustained by any credible evidence. In this case the question is whether the trial court abused its discretion in ordering a new trial in the interests of justice. In *Bohlman v. Nelson,* ante, pp. 77, 80, 92 N. W. (2d) 345, this court stated the rule:

"The trial court may in the exercise of a proper discretion order a new trial in the interest of justice when a jury's verdict is against the great weight of the evidence, even though it cannot be held as a matter of law that the answer is wrong. *Guptill v. Roemer,* 269 Wis. 12, 19, 68 N. W. (2d) 579. The trial court has wide discretion in such matters, and while an order so made is not beyond review, it will not be reversed unless it clearly appears to be an abuse of discretion. *Bolssen v. Heenan,* 3 Wis. (2d) 110, 116, 88 N. W. (2d) 32."

In *Edwards v. Alhambra Theatre Co.* (1929), 198 Wis. 228, 231, 224 N. W. 104, this court said:

"This [order for new trial in interests of justice] is a highly discretionary order. It will not be disturbed by this court where the evidence is such that conflicting conclusions may be reached by different persons."

See cases in 33 West's Wis. Stats. Anno., p. 194 *et seq.*

*Evidence regarding taillight on the truck.*

Konitzer and his son, who was with him, both testified that when the truck was loaded the taillight was burning. The highway patrolman and a garage employee, who arrived at the scene about a half hour after the accident, testified positively that the taillight was then burning. The garageman who towed the truck away also so testified, stating that the taillight was on until the truck was brought to the garage and he disconnected the battery.

Appellants place considerable emphasis in their argument on the testimony of Konitzer that although on previous occasions he had noticed the red reflection of his taillight on the road as he went down the highway, he did not notice such a reflection before the collision. We do not consider this testimony of much probative value, especially since at the time in question the Hewitt car was approaching from the rear with its headlights on high beam and Konitzer testified he was watching the headlights which were *"glaring* through the window."

Arthur E. Helm, traffic officer of the sheriff's department, testified that he had no recollection about the taillight on the truck but the evidence shows that his accident report made no mention of the absence of a taillight, although there was a space on the printed form for such a notation.

Hewitt testified that there was no taillight on the truck. He had been traveling 40 to 50 miles per hour; he had been

looking to his left as he approached the intersection, watching a car which was passing him, and did not see the truck until he was 20 to 30 feet from it. He testified that the passing car had its headlights on and that it was not crowding him in any way. No other witness testified as to a passing car; Konitzer testified there was only one pair of headlights reflected in his rear-view mirror.

Mrs. McFarlin testified she remembered nothing of the events immediately preceding the collision, having apparently suffered a retrograde amnesia attributable to the severe head injuries which she sustained in the accident.

Mrs. Hewitt testified, on adverse examination before trial, that she had been directing her attention to her husband, the driver, immediately before the collision and did not see the truck until it was right in front of them, within two or three feet ahead. On the trial she testified she saw the truck when it was 20 to 25 feet ahead and she was positive the taillight was not burning; that when she saw it she exclaimed "No taillight." On the adverse she had testified that no one in the car made an exclamation about the truck before the collision occurred. Traveling 50 miles an hour the Hewitt car covered approximately 75 feet per second. So in one third of a second Mrs. Hewitt had the opportunity to observe, distinguish, and remark about the absence of the taillight! Mrs. Hewitt explained that she was confused at the time of the adverse and that it was not until later when she went back to the scene of the accident, refreshed her memory, and reconstructed the accident that she decided her testimony should be changed. She does not say what it was at the scene of the accident that caused her to recollect that the taillight was not lit. The fact is that no settlement had been made by her driver's insurance company at the time of the adverse examination. At the time of trial her only action was against Konitzer and his insurer.

In its decision the trial court mentioned the contradiction between Mrs. Hewitt's testimony on the trial and on the adverse examination and called attention to the evidence that the taillight was burning after the accident. Further, it stated that the jury returned its verdict three times before it was complete and could be accepted; that the first time it had answered "No" to all of the subdivisions of question 1. Of this the court said:

"Of course, the jury had the right to change the answers as and when it did, but it makes me feel more secure in my conclusion ordering a new trial in the interests of justice."

We see no clear abuse of the court's discretion; the order must be affirmed.

Some argument is advanced by respondents with respect to the second item of negligence found on the part of Konitzer, the milk-truck driver. They argue that the statutes require a stop signal only when the speed of a vehicle is decreased suddenly and that the appellants failed to meet the burden of showing that there was a sudden decrease in speed, citing *Wodill v. Sullivan* (1955), 270 Wis. 591, 72 N. W. (2d) 396. Since there must be a new trial, it is unnecessary to discuss the evidence in this regard. Whether or not the rule of the *Wodill Case* applies will depend upon the evidence adduced on the new trial.

Respondents argue that even assuming there was no taillight burning on the truck at the time of the accident, under the facts of this case, such failure could not have been causal. We cannot agree. The argument is that, even without a taillight burning, the truck would have been clearly visible to Hewitt had he maintained an efficient lookout. It is pointed out that the truck was a light color and that it was illuminated by the intersection overhead light as well as by Hewitt's headlights. However, Hewitt testified he did not

see the truck until he was 20 to 30 feet from it; and respondents urge that a burning taillight would not then have made it possible for Hewitt to avoid a collision.

Hewitt's testimony that he did not see the truck until he was 20 to 30 feet from it is not the only evidence in that regard in the record. It is undisputed that Hewitt's car left skid marks 110 feet long south of the point where the gouge marks were made in the pavement. At 50 miles per hour the car traveled 55 feet during Hewitt's reaction time. Thus, it would be logical to conclude that Hewitt saw the truck when he was 165 feet from it. Under all these circumstances, it was for the jury to decide whether or not a burning taillight on the truck would have made it possible for Hewitt to avoid the accident.

Since there must be a new trial, one other matter should be called to the trial court's attention. Originally Harry Hewitt commenced an action against respondents for his damages. Thereafter, Mrs. Hewitt and Mr. and Mrs. McFarlin commenced their action against Hewitt and his insurer and the respondents. Before the trial started appellants settled their claims with Hewitt's insurer and executed a release from further claim against Hewitt and his insurance company. The settlement was approved by the court. On the trial appellants called Hewitt adversely and his testimony was admitted over objection by the respondents. This was error. At the time of trial Hewitt was not an adverse party as to the appellants.

"Where a guest occupant of an automobile operated by her insured husband brought an action against the insured's liability carrier alone for injuries sustained when the insured lost control of the car, and the insured was not made a party defendant in such action, the insured, who would not be liable to the plaintiff under any judgment obtained by the plaintiff in such action, was not a 'person for whose immedi-

ate benefit' the action was being defended, nor an 'adverse party' as to the plaintiff, so that it was error to permit the plaintiff to call and examine the insured as an adverse witness under sec. 325.14 (1), Stats." (Headnote 1.) *Voss v. Metropolitan Casualty Ins. Co.* (1954), 266 Wis. 150, 63 N. W. (2d) 96.

*By the Court.*—Order affirmed.

BROWN, J., took no part.