RODENKIRCH and another, Respondents, v. JOHNSON and another, Appellants. [Two cases.] *

*January 4—February 2, 1960.*

* Motion for rehearing denied, with $25 costs, on April 5, 1960.

For the appellants there were briefs by *McLeod, Donohue & Colwin* of Fond du Lac, and oral argument by *Raymond R. Colwin.*

For the respondents there was a brief by *Ray T. McCann* of Milwaukee, and *Robert Stoltz* and *Schloemer, Stoltz & Merriam,* all of West Bend, for Russell Rodenkirch, and by *John R. Holden, Arthur J. Olsen,* and *Holden & Schlosser,*

all of Sheboygan, for Russell Rodenkirch and the Heritage Mutual Insurance Company, and oral argument by *Mr. McCann*.

HALLOWS, J. The issues presented are: 1. Did the trial court err in holding as a matter of law that respondent was not negligent as to speed? 2. Did the court err in holding as a matter of law that the appellant was negligent as to lookout? 3. Did the trial court abuse its discretion in granting a new trial in the interest of justice?

1. *Respondent's negligence as to speed.* The appellant contends there is sufficient credible evidence to sustain the jury's finding, while the respondent claims any inference as to the speed of the respondent drawn from the physical facts is based on conjecture and speculation. This court has consistently held that when there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports the jury's finding, neither the trial court nor this court should change the jury's finding. *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 87 N. W. (2d) 772; *Kanzenbach v. S. C. Johnson & Son, Inc.* (1956), 273 Wis. 621, 79 N. W. (2d) 249. In reviewing a verdict of the jury on appeal, the evidence should be reviewed and considered from the standpoint most favorable to support the verdict. *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129; *Henthorn v. M.G.C. Corp.* (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759. If there is no credible evidence from which a jury reasonably could infer an ultimate fact of negligence, then such finding would necessarily be in the realm of conjecture and speculation. A jury cannot base its findings on conjecture or speculation. *Larson v. Splett* (1954), 267 Wis. 473, 480, 66 N. W. (2d) 181; *Hyer v. Janesville* (1898), 101 Wis. 371, 376, 77 N. W. 729. The question is whether the physical facts constitute such credible

evidence from which a reasonable inference could be drawn by the jury that the respondent was negligent as to speed, or whether such an inference would be in the realm of speculation.

It appears from the record that the appellant and his wife had spent the evening at a neighborhood tavern and were on their way home. They were proceeding north on Highway W at a speed of 20 to 25 miles per hour when they approached the incline some 800 feet south of the intersection. The appellant does not remember anything about the accident thereafter. Earlier in the evening the respondent and his passengers had attended a basketball game and had stopped at a tavern at Mt. Calvary. They were on their way home at the time of the accident. The respondent suffered amnesia and does not remember the accident or the events immediately preceding it. The speed limit in the area was 25 miles per hour. The entire front and part of the left side of respondent's car were damaged extensively. The appellant's car was also severely damaged in front and on the right. Several photographs of the damaged cars are in evidence.

There was a gouge mark in the west lane of the highway near the center line and south of the intersection which a police officer testified was the approximate point of impact. After the impact the Johnson car, facing south, was 65 feet, nine inches south from this gouge mark. The Rodenkirch car was some 36 feet from the gouge mark, facing north. It is obvious that both cars were spun around by the impact and faced the opposite direction from which they were proceeding. The appellant sustained severe personal injuries consisting of a fractured skull, jaw, right elbow, pelvis, hip, and ankle, a ruptured bladder, and permanent injury to his right knee. He was hospitalized seventy-five days. The respondent also sustained personal injuries which hospitalized

him some two weeks. A resident living close to the intersection testified he was suddenly awakened by a very loud noise.

Negligence as to speed may reasonably be inferred from physical facts which may be sufficient to overcome the presumption of due care afforded a deceased person or one suffering from amnesia. This principle was applied in respect to the position of vehicles on the highway at the time of impact. *Evjen v. Packer City Transit Line,* ante, p. 153, 100 N. W. (2d) 580. In the case of *Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 27 N. W. (2d) 468, this problem was discussed and the rule applied to lookout and speed. This court held a causally negligent speed could be reasonably inferred and deemed established by the physical facts that after skidding 45 feet on a dry cement pavement the car struck another car with such speed and force that it drove the frame members to within 13 inches of each other, ripped the left door off its hinges, tore off about one third of the top, caused other major damages, and forced it at least 52 feet across the intersection and into the ditch. It is true in the *Haase Case, supra,* that the cars were approaching at right angles, but that fact does not preclude the application of the rule to cars approaching from opposite directions.

Here the right side of the appellant's car and the left side of the respondent's car were both damaged. The jury could draw an inference that the appellant was turning left as he intended. In the *Haase Case, supra,* the inference from the physical facts was so strong that this court stated a jury could consider incredible the testimony of a witness of a 35-mile-per-hour speed. Great speed was inferred from the physical facts of damage to the cars and from the serious injuries to the occupants in *Rubach v. Prahl* (1926), 190 Wis. 421, 209 N. W. 670. In *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 82 N. W.

(2d) 906, this court said (p. 551) : "The inference of terrific speed at the point of collision was supported by photographs in the record showing an extraordinary degree of demolition of the two cars, and thus evidencing exceptional force of impact." Physical facts disclosed by the photographs and other evidence overcame the presumption of due care and established negligence in *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 279 N. W. 645.

The jury could reasonably conclude that the speed of the respondent was great and in excess of 25 miles per hour from the physical facts and other testimony, especially that the appellant's car was forced backward over 65 feet, spun around in the opposite direction, and practically demolished; the respondent's car continued beyond the apparent point of impact some 35 feet in its direct line of force, was turned around, and was extensively damaged; and four people were killed outright and two seriously injured.

The respondent also contends that even if the respondent was negligent as to speed it could not as a matter of law be causal, relying on *Clark v. McCarthy* (1933), 210 Wis. 631, 246 N. W. 326, for the proposition that speed as an item of negligence is not causal and would not, standing alone, sustain the verdict. Respondent also relies on *Strnad v. Co-operative Insurance Mutual* (1949), 256 Wis. 261, 40 N. W. (2d) 552; *New Amsterdam C. Co. v. Farmers M. A. Ins. Co.* (1959), 5 Wis. (2d) 646, 94 N. W. (2d) 175; and *Kleckner v. Great American Indemnity Co.* (1950), 257 Wis. 574, 44 N. W. (2d) 560. The statement in the *Strnad Case, supra,* and quoted in the *New Amsterdam Case, supra,* as to the slight probative value of the position and condition of cars after an accident was made in reference to the issue concerning the position of the cars on the highway immediately prior to the accident. These cases held such evidence was not conclusive. In the *Strnad Case, supra,* the inference was at variance with the oral testimony; and in the *New*

*Amsterdam Case, supra,* different inferences could reasonably have been drawn from the physical facts. In the *Kleckner Case, supra,* it was said that physical facts, unless irrefutably established and permitted only one deduction, would not destroy the probative value of oral testimony. These cases do not control the instant case. The doctrine of the *Clark Case, supra,* is clarified in *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 83 N. W. (2d) 487; *Heagney v. Sellen* (1956), 272 Wis. 107, 74 N. W. (2d) 745, 75 N. W. (2d) 801; *Taylor v. Hardware Mut. Ins. Co.* (1958), 3 Wis. (2d) 27, 87 N. W. (2d) 525.

Excessive speed has a direct effect upon other types of negligence. For instance, speed may limit the lookout of the operator or his ability to slow down or stop in time to avoid a collision. It is erroneous to state that excessive speed may not be causal because other items of negligence may or may not also be present. The causality of speed does not drop out of a case because there may also exist negligence in other respects, nor does it cease to exist necessarily because other items of negligence do not exist. We cannot adopt as a principle of law that speed, standing alone, can never be causal. Recently in two cases this court held that excessive speed was causal. *Ruid v. Davis, supra,* and *Kornetzke v. Calumet County* (1959), 8 Wis. (2d) 363, 99 N. W. (2d) 125. In the latter case the plaintiff struck a tree in the center of a small boulevard where the highway divided, and this court said, in inferring speed from physical facts and holding it was causal (p. 367) : "It is apparent to this court that more and more accidents and injuries are being caused by excessive speeds, and we feel it incumbent upon us to consider such negligence in the light of present-day trends. It appears that in many instances accidents would not happen at all if drivers maintained a proper speed, and that where they do happen the consequences are usually more disastrous

when they result from negligent speed than when they result from negligence as to lookout or management and control."

We believe there is sufficient credible evidence on which the jury could reasonably infer that the respondent was causally negligent as to speed and the trial court was in error in finding the respondent not causally negligent as to speed as a matter of law.

2. *Appellant's negligence as to lookout.* The trial court stated in its memorandum decision that the finding that appellant was not negligent in respect to lookout was questionable and based the changing of this answer on the fact that there is no evidence that the appellant saw the respondent's car prior to the collision and that if he had looked he would have seen it. There is no evidence to show where the respondent was at any given time immediately before the impact and in relation to the appellant's position south of the intersection. The trial court assumed that if the appellant had looked, he would have seen the respondent's car. The difficulty with this reasoning is that there is no evidence to sustain it. Both the appellant and the respondent were approaching the intersection on top of the hill from opposite directions. There is no evidence that appellant was or was not looking ahead, nor is there any evidence that if he had looked, the respondent's car would have been so far up the hill as to be within the appellant's view in time for him to avoid the accident. It is true the appellant stated he did not see the respondent's car. This statement must be taken with his testimony that he did not remember anything after starting up the incline. It was for the jury to believe or disbelieve this testimony. Due to the lack of credible evidence that the appellant was negligent as to lookout, the jury could conclude this issue was not proven by the respondent. The facts do not call for the application of the rule that failure to see what must have been in plain sight or failure to look

constitutes a negligent lookout as a matter of law as stated in *Lind v. Lund* (1954), 266 Wis. 232, 63 N. W. (2d) 313.

3. *New trial in the interest of justice.* The respondent contends that a new trial may be ordered in the interest of justice if the jury's finding is against the great weight of evidence. This is true. *McFarlin v. Hewitt* (1958), 5 Wis. (2d) 488, 93 N. W. (2d) 445; *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 88 N. W. (2d) 366. We stated such was the rule, even though the trial court could not hold the jury's answer was wrong as a matter of law. *Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. (2d) 579, 69 N. W. (2d) 571. However, the granting of the new trial was not based on the reason that the findings were against the great weight of the evidence, except as might be inferred from changing the answers. The answers relating to respondent's negligence were changed upon an erroneous view of the law that negligent speed could not be reasonably inferred from the physical facts and the causality of the speed was doubtful. The reasons for granting the new trial were stated by the trial court as follows:

"(a) Changing the answer of the jury to the various questions as ordered above are of such a nature and so much doubt exists in the court's mind that the court is of the opinion that justice might very well miscarry unless a new trial is granted in the interests of justice;

"(b) That the evidence is of such a nature that the questions of negligence on the part of Russell Rodenkirch should be redetermined by a new trial, as should be the question of negligence on the part of Gordon Johnson; that to grant a judgment on the verdict as changed in accordance with this decision might very well result in a miscarriage of justice, as the court is of the opinion that the questions herein involved are of such a nature that a new trial should be granted."

It is clear that the trial court was doubtful that the answers in the verdict should have been changed. The court also believed that the nature of the evidence, *i.e.,* physical facts, was such that the issue of negligence as to both the appellant and the respondent should be redetermined by a jury and to grant a judgment on a verdict as changed might result in a miscarriage of justice. The physical facts from which a jury could reasonably infer causal negligence as to speed on the part of the respondent and the lack of negligence on the part of the appellant as to lookout will be the same on a new trial. Jury questions were presented on these issues and properly submitted on the trial. There is no reason assigned that justice was not done at the trial. To grant a new trial, on the basis given by the trial court after erroneously changing the answers, was an abuse of discretion. *Dowd v. Palmer* (1944), 245 Wis. 593, 15 N. W. (2d) 809.

*By the Court.*—Those parts of the order appealed from changing the answers to the negligence questions, striking out the apportionment of negligence and granting a new trial, are reversed. The trial court is directed to reinstate the jury's answers in its verdict except those answers modified by the court as to damages and to enter judgment thereon.