HILLSTEAD and husband, Appellants, v. SMITH and another, Respondents.

*No. 109. Argued October 3, 1969.—Decided October 31, 1969.*
(Also reported in 171 N. W. 2d 315.)

562

For the appellants there was a brief by *Gavic & Richardson* of Spring Valley, and oral argument by *Robert J. Richardson.*

For the respondents there was a brief by *Gwin, Fetzner, Richards & Skow,* attorneys, and *C. A. Richards* of counsel, all of Hudson, and oral argument by *C. A. Richards.*

HEFFERNAN, J.   The statement of facts appearing in the first case of *Hillstead v. Shaw* (1967), 34 Wis. 2d 643, 150 N. W. 2d 313, accurately describes the accident and course of Luella Hillstead's disability and treatment.

"On August 9, 1964, Luella Hillstead was on her way home from work, operating her 1953 Chevrolet automobile in a westerly direction on Highway 12 near Woodville, Wisconsin.   Lawrence Smith, Chicago, was driving a 1963 Chevrolet in a westbound direction on Highway 12 and was traveling from Chicago to Minneapolis.   Iva Shaw, the owner of the car, was seated in the front seat, and Beulah Snowden, Betty Shaw and Donna Robinson were passengers in the back seat.   A collision between the two vehicles occurred at the T-intersection of Highway 12 and county road NN.   Mrs. Hillstead was attempting to turn left onto county road NN to return to her home.   Smith swung into the left lane of Highway 12 to pass the Hillstead vehicle and accelerated when he saw

the Hillstead vehicle was turning. The left front of the Hillstead car struck the right side of Smith's vehicle from the center to the rear.

"Mrs. Hillstead appeared to be unhurt at the scene of the accident, but that night began having back trouble in the middle of her lower back. The next morning Mrs. Hillstead went to see Dr. Arthur Heiser in Woodville and he prescribed pain pills to ease the pain in Mrs. Hillstead's back. Dr. Heiser subsequently referred Mrs. Hillstead to Dr. Charles Ihle in October, 1964, and Dr. Ihle, after examination, prescribed a medical garment which he fitted for Mrs. Hillstead. Dr. Ihle also prescribed pain pills but Mrs. Hillstead's back pain became worse. In July, 1965, Mrs. Hillstead went to Dr. Vernon Smith, an expert surgeon, and Dr. Smith performed both an exploratory myelogram and an exploratory discogram on Mrs. Hillstead. Dr. Smith's findings as a result of these tests showed that Mrs. Hillstead had a ruptured disc at the lumbar—fifth level, and Dr. Smith performed surgery on August 2, 1965, to correct this defect.

"On June 29, 1965, Luella Hillstead brought suit in circuit court for St. Croix county against Lawrence Smith and State Farm Mutual Automobile Insurance Company, alleging that Smith's negligence had caused the collision on Highway 12, and alleging that her back injuries stemmed from this collision. Plaintiff's husband also sued defendants for damage to his car, which plaintiff was driving at the time of the accident.

"Trial commenced on May 23, 1966. At trial, plaintiff testified that she was in the middle of the right-hand lane when she started to turn left off Highway 12 to county NN, that she put on her directional lights to indicate her intention to turn, and that the collision occurred just as she was entering county NN. Plaintiff also testified that the county NN intersection was marked by a sign and that she made the turn at a speed of about 20 to 25 miles an hour. Plaintiff stated that defendant traveled in the ditch south of Highway 12 adjacent to the left-hand lane, spun around, and wound up facing east in the middle of the road. Plaintiff's car wound up on the shoulder of the road facing southwest.

"Defendant testified that Highway 12 was level for some distance at the scene of the accident and he sighted the plaintiff's car about a half a mile before he got to

the intersection. Defendant stated that plaintiff's car was pulled off the highway on the north side of the road and had stopped. Defendant testified that he attempted to pass the plaintiff's car and that the plaintiff's directional lights were not on. According to defendant, the collision took place in the middle of the intersection and his car never went into the south ditch on the left-hand side of the road. Defendant testified that he did not blow his horn to signal that he was passing and his testimony in this respect was reiterated by each of the passengers in his car." PP. 645-647.

Additional evidence adduced at the second trial will be referred to hereinafter.

Defendant's testimony that Luella Hillstead pulled off to the edge of the road to the right and did not stop near the center line as contended by plaintiff was corroborated by Beulah Snowden. Both defendant and Snowden testified that plaintiff gave no signal by means of directional lights or otherwise for a left turn. This was disputed by plaintiff, who contended she first activated her turn signals 300-400 feet from the intersection when she saw the defendant approaching from the rear. She made no subsequent lookout to the rear.

Although Beulah Snowden's testimony was unimpeached, Smith's statement at the second trial that he saw the Hillstead car at a distance of a half a mile contradicted his first trial testimony that he first saw the car at 150 to 200 feet. Smith testified that the accident occurred near the center of the intersection as Luella Hillstead pulled into his path from the far right side of the road. Luella Hillstead testified that she had completed her turn and the impact occurred after her car was actually within the limits of Highway NN that formed a T-intersection with Highway 12.

She fortifies her claim with the testimony of a police officer that there were wheel tracks on the left or south side of the road that commenced east of the intersection and continued at the edge of the road beyond the inter-

section. Smith admits he swerved to the side of the road after the impact but denies that he was in that position before the accident. His testimony is corroborated by Beulah Snowden.

It is undisputed that Smith violated two safety statutes in that he did not sound his horn and passed or attempted to pass at an intersection.

There is evidence from which a jury could believe that Luella Hillstead made a left turn without making the required signal and without making an efficient observation to the rear. There was also evidence that could be believed that Luella Hillstead had made her turn from the far right lane of Highway 12 instead of a point near the center line. There was no evidence that, when she slowed down, her brake lights were activated.

In this case, both drivers were found causally negligent by the jury.

"These findings will not be upset if there is any credible evidence which, under any reasonable view, fairly admits of an inference supporting the finding." *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. 2d 249, 254, 137 N. W. 2d 6; *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. 2d 288, 293, 130 N. W. 2d 866; *Rodenkirch v. Johnson* (1960), 9 Wis. 2d 245, 248, 101 N. W. 2d 83.

It is apparent from the recital of the testimony above that there was ample credible evidence to sustain the findings of negligence on each driver.

Under the circumstances herein, where the trial judge reviewed the evidence in detail and set forth his reasons for sustaining the verdict, the jury's decision is given even greater weight on appeal.

In *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48, we said:

". . . (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the

blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." *See also Cornwell v. Rohrer* (1968), 38 Wis. 2d 252, 257, 156 N. W. 2d 373, and *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 259, 147 N. W. 2d 277.

It is clear that the jury's findings of negligence on each of the parties must be affirmed.

Nor, under these circumstances, will we tamper with the apportionment of negligence. Judge PFIFFNER pointed out in his decision:

"Here the jury could compare the negligence of Smith in failing to blow his horn and in passing at an intersection and find it to be less contributory than that of Mrs. Hillstead who failed to look to the rear at a time and place efficient for safety and who failed to signal for the left turn."

We cannot, under these facts and in light of the entire record, say that as a matter of law the defendant's negligence was greater than that of the plaintiff. The apportionment was within the bounds of reason.

In the absence of patent unreasonableness of the apportionment, we will not substitute our judgment for that of the jury. We adhere to the rule that a jury's apportionment of negligence and a trial court's approval of that apportionment will be set aside only when the " 'percentages of negligence . . . are . . . grossly disproportionate.' " *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 631, 139 N. W. 2d 595.

The plaintiff, however, claims that the finding of negligence on her is based on an improper instruction to the jury. Twice in the instructions, Judge PFIFFNER referred to the duty of lookout, and in reference to both parties stated:

". . . you are instructed that it is the duty of every operator of a motor vehicle to exercise ordinary care to keep a lookout ahead and about him and to the rear if the occasion requires."

Subsequently, in referring to the obligation of the turning vehicle driven by Luella Hillstead, the judge referred to sec. 346.34, Stats., which provides that, "No person shall turn a vehicle at an intersection . . . unless and until such movement can be made with reasonable safety." He instructed the jury that this statute required the driver of the turning vehicle to exercise ordinary care to make an efficient lookout. In his opinion following verdict, the trial judge specifically stated that the evidence was sufficient for the jury to find that Luella Hillstead was negligent in failing "to look to the rear at a time and place efficient for safety."

The plaintiff's objection to these instructions is confused, but appears to be based upon *Tesch v. Wisconsin Public Service Corp.* (1957), 2 Wis. 2d 131, 85 N. W. 2d 762. Suffice it to say that the *Tesch Case* involved different facts and was based upon *Thoresen v. Grything* (1953), 264 Wis. 487, 59 N. W. 2d 682. The holding in *Thoresen* was summarized in the *Tesch Case:*

". . . a driver had no duty to the driver behind him except to use the road in the usual way, in keeping with the laws of the road, and that until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner." *Tesch, supra,* page 136.

These cases were distinguished in *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626. It is clear from *Bentzler* that it can no longer be said that a driver has no duty of lookout to the rear in all cases. In *Bentzler,* we took the position, following the dicta of *Jacobson v. Greyhound Corp.* (1965), 29 Wis. 2d 55, 138 N. W. 2d 133, that a duty to maintain a lookout to the rear clearly exists when a driver's position on the highway would be likely to constitute a hazard to drivers approaching from the rear or when he was about to execute a maneuver

which created a potential hazard to following traffic. In *Diener v. Heritage Mut. Ins. Co.* (1967), 37 Wis. 2d 411, 155 N. W. 2d 37, we required an efficient lookout to the rear, for the reason that lookout to the front was not preempted by circumstances that required the driver's attention and lookout ahead of him.

In the instant case Luella Hillstead knew that the Smith car was following her. She nevertheless, immediately prior to making her turn, failed to look to see if the turn could be made with safety. Under these circumstances, where her conduct created a potential hazard to following traffic, she had a duty of making an efficient lookout to the rear.

We conclude that the trial judge's instructions were in accord with the established law of the state of Wisconsin and that under these circumstances, where there was no evidence of any potential hazard ahead, the primary duty was to look to the rear for the traffic she knew was approaching.

At the first trial an Iva Shaw testified on behalf of the defendant. Subsequently the plaintiff learned that Iva Shaw signed a statement which contradicted the evidence given on behalf of the defendant in the original trial. The statement, however, contained material damaging to the plaintiff. Plaintiff therefore sought to call Iva Shaw as an adverse witness, seeking thereby apparently to be able to cross-examine her without the necessity of eliciting statements unfavorable to plaintiff's cause and without being bound by her testimony. The court properly denied this request and ruled correctly that sec. 885.14, Stats., referred to examining adverse parties or persons for whom the action is prosecuted or defended. It is clear that Iva Shaw was not such a party. Plaintiff's attorney contends in this court, for the first time apparently, that, under the rule of *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609, he should have been able to call Iva Shaw for the purpose of having her con-

tradictory statements put in the record, not only for impeachment purposes but as substantive evidence. Judge PFIFFNER did not prohibit the plaintiff from calling Iva Shaw as a witness. He merely prohibited calling her adversely. No attempt was made to introduce the testimony on the *Gelhaar* rationale and, accordingly, the point now urged by the plaintiff is not before us.

Plaintiff's final objection is that the damages awarded for personal injury in the amount of $4,500 were inadequate. The damages were carefully reviewed by the trial judge. He pointed out that the back surgery was successful, that her recovery was uneventful, and that further improvement was expected. She was able to return to work, and her work record was good following her return to work. It was undisputed that she was obliged to wear a therapeutic back support when doing heavy work, and it was clear that she could not do heavy lifting with her back in a bent position. The trial judge summarized the condition of her back by stating, ". . . functionally she obviously has a pretty good back."

Our test for reviewing damages whether the claim is that they are adequate or inadequate is the same. We have stated:

". . . a verdict may not be set aside as excessive on appeal unless there is an indication that the award was the result of passion, prejudice, corruption, or a disregard of the evidence or the rules of law." *Collova v. Mutual Service Casualty Ins. Co.* (1959), 8 Wis. 2d 535, 540, 99 N. W. 2d 740.

Moreover, we have held that where there was no error in law, we would not upset a judge's post-trial order in regard to damages unless an abuse of discretion was apparent. *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235; *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 629, 165 N. W. 2d 129. The plaintiff herein has not even alleged that there is an abuse of discretion in the trial court's post-trial evaluation of the damages. She merely asserts

that "common sense" dictates that her pain and suffering should have been valued at much more than $4,500. The trial judge agreed that this figure was in the lower portion of the range of a reasonable verdict but was not so low, in view of the evidence, to evince passion, prejudice, or perversity.

The evidence on damages on the second trial was substantially the same as that discussed in the first *Hillstead Case, supra,* and we therefore do not repeat the discussion of the evidence set forth therein. Suffice it to say that applying the tests stated above and after reviewing the record and the transcript of all the testimony, we are satisfied that the jury award, approved by the trial judge, is supported by the evidence and is not inadequate. The approval of the award did not constitute an abuse of discretion.

*By the Court.*—Judgment affirmed.