CARR, Appellant, v. AMUSEMENT, INC., Respondent.

*No. 239. Argued April 27, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 388.)

For the appellant there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman,* and oral argument by *Brendan M. Comer* and *William E. Glassner, Jr.,* all of Milwaukee.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

ROBERT W. HANSEN, J. Several issues are raised by plaintiff-appellant, the principal one dealing with the jury finding that there was no negligence on the part of the defendant.

*Jury verdict.*

This is a jury verdict which has the full approval of the trial court.[1] It is not to be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings.[2] The plaintiff contends that the condition of the steps down which he fell constituted a violation of a safety order of the state Department of Industry, Labor & Human Relations and, as a matter of law, of the safe-place statute. The trial court did instruct the jury on the safety orders in question, but was of the opinion that there was no violation as a matter of law. The jury found no negligence. It is in the light of this double rejection of plaintiff's claim of a violation of safety orders that the contention is to be considered.

The plaintiff relies upon general safety orders requiring steps from public buildings to have "a uniform rise," [3]

[1] ". . . the court has no quarrel with the jury's verdict, . . . I will say frankly that if the jury answered the question—Question Number 1—the other way, the court would have changed the answer. There was absolutely no evidence on which I could see that any negligence on the part of the defendant could be found."

[2] ". . . we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48. *See also: Porter v. General Casualty Co.* (1969), 42 Wis. 2d 740, 749, 168 N. W. 2d 101; *Hillstead v. Smith* (1969), 44 Wis. 2d 560, 566, 171 N. W. 2d 315.

[3] "All stairways and steps required as exits by this code shall have a uniform rise of not more than 7¾ inches and a uniform

and to be finished with "a non-slippery surface." [4]  Photographs and testimony introduced on behalf of plaintiff showed that the four steps in front of the lanes were covered with a corrugated nonslip material, with ridges to insure the nonslip effect.  Portions of the nonslip material had deteriorated or broken off at the point where the asbestos material covered a portion of the riser beneath each step.  Plaintiff contends this makes inescapable the conclusion that the steps were not "uniform."  However, uniform does not mean identical, and, particularly where the major wear or breaking was on the portion of the covering that was not on the surface of the steps or treads, it cannot be said that, as a matter of law, the condition of the steps constituted a violation of the safety orders.

Even if this hurdle were to be surmounted, there remains the issue of causal connection of the worn risers with the accident.  It is true that this court has stated that when a failure to fulfill a duty under the safe-place statute exists and an accident occurs which the performance of the duty was intended to prevent, the law presumes that the damage was caused by the failure.[5]  However, there is no such presumption when the accident does not occur at the spot or place where the defect exists or when the presence of safeguards or the elimination of the defect would have had no effect in preventing the accident.[6]  Here the link between the fact of accident and claim of defect is missing.  The plaintiff testified that he

tread of not less than 9½ inches, measuring from tread to tread, and from riser to riser." 4 Wis. Adm. Code, sec. IND 51.16 (4) (May, 1968).

[4] "The edges of all treads and the edges of all stairway landings shall be finished with a non-slippery surface not less than 3 inches in width." 4 Wis. Adm. Code, sec. IND 51.16 (4) (c).

[5] *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 51 N. W. 2d 42. *See also: Erdmann v. Frazin* (1968), 39 Wis. 2d 1, 158 N. W. 2d 281.

[6] *Baker v. Bracker* (1968), 39 Wis. 2d 142, 158 N. W. 2d 285.

could not state if the accident occurred at the spot where the defect existed. He testified that as he came within 12 inches or so of the top step, his left heel caught on something and he tripped and fell. This is no claim of worn or missing covering 12 inches or so before the top step was reached. Actually, the plaintiff could not and did not state that his foot ever touched an area of defect. The presumption upon which plaintiff relies is that, "if his foot did come in contact with a defect, such defect caused his injury." [7] There is no corollary presumption that "his foot came in contact with a defect." [8]

*Owner as insurer.*

Plaintiff acknowledges the several holdings of this court which have stated that, under the safe-place statute, the "responsibility of such owner or occupier is not that of an insurer." [9] It is not urged that the present case be distinguished or differentiated from the facts present in these other cases, but rather that this holding be repudiated in favor of holding owners of public buildings ". . . strictly liable for all injuries that occur on [its] premises while holding them open to the public for its own economic gain." Such suggestion goes beyond the common law, the safe-place statute and all prior holdings of this court.

Under the common law, an employer owed his employees the duty to provide a reasonably safe place of employment, while the highest duty of the owner of land towards someone on the premises was that of ordinary care, owed only to those who fell in the category of in-

---

[7] *Id.* at page 148.

[8] *Id.* at page 147.

[9] *Heckendorf v. J. C. Penney Co.* (1966), 31 Wis. 2d 346, 350, 142 N. W. 2d 801; *Paaske v. Perfex Corp.* (1964), 24 Wis. 2d 485, 129 N. W. 2d 198; *Zernia v. Capitol Court Corp.* (1963), 21 Wis. 2d 164, 124 N. W. 2d 86, 125 N. W. 2d 705; *Strack v. Great Atlantic & Pacific Tea Co.* (1967), 35 Wis. 2d 51, 150 N. W. 2d 361.

vitee.[10] The state safe-place statute, enacted in 1911,[11] created an increased duty for those who hold open their premises to others.[12] To make the owners of public buildings absolute insurers as to persons coming onto their premises would set aside the safe-place statute and the earlier common-law standards as to liability. It would also make irrelevant all existing statutes and general orders as to safety of public buildings. The entire structure of checking and enforcing safety regulations by the designated state agency would be rendered meaningless. The concept of giving owners of public premises every incentive to keep such premises safe would be abandoned. More would be involved than facilitating the recovery by plaintiffs who sustained injuries while on public premises or in public buildings. The safe-place statute created and it determines the rights of the plaintiff here, as it has done in similar cases in the past and will do in such cases in the future, unless or until it is modified or changed by the legislature which enacted it.

[10] *Welty v. Lake Superior Terminal & Transfer Railway Co.* (1898), 100 Wis. 128, 75 N. W. 1022; *Zentner v. Oshkosh Gas Light Co.* (1905), 126 Wis. 196, 105 N. W. 911; *Walker v. Simmons Mfg. Co.* (1907), 131 Wis. 542, 111 N. W. 694. As to the present law concerning the duty of a landowner in cases not within the safe-place statute, *see Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 125, 141 N. W. 2d 902; *Kretchman v. Reid* (1970), 46 Wis. 2d 677, 176 N. W. 2d 301.

[11] Laws of 1911, ch. 485.

[12] "It is obvious that these provisions make some radical changes in the common law as it existed when the act was passed, . . . It is also apparent that the employer no longer fulfills his duty by furnishing a *'reasonably'* safe place. Instead, he must furnish one which is as free from danger as 'the nature of the employment will reasonably permit.' . . .

"The statute in terms imposes an absolute duty upon the employer to make the place of employment as free from danger as the nature of the employment will reasonably permit, and . . . the liability of the master follows as a matter of course if this duty is not performed and injury results to the employee because it is

## Instruction on duty.

The plaintiff contends that it was error for the trial court to follow the suggestion of this court [13] in first giving to the jury the common-law negligence standard as to the duty of the parties, and then stating that under the safe-place statute the defendant has an additional duty which additional duty was then set forth. The procedure followed by the trial court follows the recommendation of the board of circuit judges in its standard jury instructions.[14] The plaintiff claims that this recommended procedure is confusing to a jury. On the contrary, this form of instruction makes clear the distinction between the common-law duty of the parties and the special statutorily imposed duty of the owner of a public building under the safe-place statute. Actually, it highlights both the distinction and the statutorily imposed additional duty of an owner of a public building. The clarity and emphasis provided is not prejudicial to either party, certainly not to the plaintiff. The claim of error is without merit or substance.

## Missing witness.

Plaintiff also argues that it was error for the trial judge to give to the jury what has come to be known as the "missing witness" instruction. Here there was a missing witness, and that missing witness was the plaintiff's wife. As stated by this court, the general rule is that ". . . the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an

not performed. . . ." *Rosholt v. Worden-Allen Co.* (1913), 155 Wis. 168, 174, 175, 144 N. W. 650.

[13] *Petoskey v. Schmidt* (1963), 21 Wis. 2d 323, 331, 332, 124 N. W. 2d 1.

[14] Wisconsin Standard Jury Instructions—Civil, Part I, 1005; Part II, 1900.

inference against such party. . . ." [15] The inference thus raised is persuasive, not probative, and, standing alone, would not support plaintiff's case or defendant's defense.[16] Here the plaintiff argues that the defendant could have easily subpoenaed plaintiff's wife as a witness if her testimony was considered important. That is true, but it clearly would have been "more natural" for plaintiff to call his wife to testify than for the party he was suing for damages to do so.[17] The plaintiff also submits now that the testimony of the wife would have been immaterial, but the trial court correctly pointed out that the wife could have produced testimony relevant to the events that occurred while she was with her husband at the bar, specifically including how much alcohol he had consumed. In any event there is an area of trial court discretion as to whether the "missing witness" instruction should be given to the jury, and here the trial court was well within the outer limits of such area of judicial discretion.

*By the Court.*—Judgment affirmed.

[15] *Feldstein v. Harrington* (1958), 4 Wis. 2d 380, 388, 90 N. W. 2d 566. *See also: Shaw v. Wuttke* (1965), 28 Wis. 2d 448, 459, 137 N. W. 2d 649; *Schmiedeck v. Gerard* (1969), 42 Wis. 2d 135, 143, 166 N. W. 2d 136; Wisconsin Standard Jury Instructions—Civil, Part I, 410.

[16] *Rudy v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.* (1958), 5 Wis. 2d 37, 46, 92 N. W. 2d 367; *Ernst v. State* (1969), 43 Wis. 2d 661, 671, 170 N. W. 2d 713.

[17] "The field of family relationships is another in which the adverse inference from the failure to call an available witness has been freely drawn. Thus, in civil cases the failure to call the spouse of a party to give relevant testimony has frequently been held to permit such an inference." Annot. 5 A. L. R. 2d 893, 928, 929. *See also: Lubner v. Peerless Ins. Co.* (1963), 19 Wis. 2d 364, 371, 120 N. W. 2d 54 (as to relatives of litigants); 29 Am. Jur. 2d, *Evidence,* p. 227, sec. 181 (as to relationship between party and witness as bearing upon control).