BLEWETT and another, Respondents, vs. GAYNOR, Appellant.

*September 4 — September 23, 1890.*

(1) Pleading: Account stated: Payment: Burden of proof. (2, 3) Partnership: Settlement by one partner: Evidence: Judgment. (4) Opening case for further evidence: Discretion.

1. In an action to recover a balance alleged to be due upon a contract for logging, where the defendant admitted that the amount of work done and the agreed price therefor were as alleged, but pleaded payment in full, an allegation of the complaint that an accounting had been had and a balance found due the plaintiffs, which the defendant agreed to pay, is *held* to be merely an admission of part payment and not to make the action one solely upon an account stated. The burden was therefore upon the defendant to prove payment in full, and not upon the plaintiffs to prove the accounting.

2. The evidence in this case — showing, among other things, that one of the plaintiffs testified there had been no settlement in full of the claims in suit, and that the other plaintiff, his partner, who was clearly in the interest and to a considerable extent under the control of the defendant, testified that he had made such a settlement with the defendant and given a receipt in full (which was not produced), but was unable or unwilling to state what claims were allowed in such settlement on either side — is *held* to sustain a finding of the trial court that no settlement in full had been made.

3. The respective interests of the plaintiffs, as between themselves, in the claims in suit not being shown by the evidence, the fact that one of them testified that such claims had been settled does not limit the judgment to one half of the amount thereof.

4. A motion to have a case reopened, after a referee has reported, for the receipt of further testimony is one peculiarly addressed to the discretion of the trial judge, and his determination is conclusive unless it clearly appears that injustice will be done thereby.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice Taylor as a part of the opinion:

This action was commenced originally by *Edmund Blewett* against *James Gaynor* to recover for the sum claimed to be due *Blewett* from said *Gaynor* upon a written contract signed by the said *Blewett* and *Gaynor* for cutting and putting in the river a large quantity of pine logs in the winters of 1883–4 and of 1884–5. After this action was commenced the defendant claimed that the contract was in fact made by *Blewett* and *Patrick Gaynor,* a brother of *James Gaynor,* of the one part, and himself of the other part; and thereupon such proceedings were had in the action that the said *Patrick Gaynor* was made a co-plaintiff with *Blewett;* and for the purposes of this action and of this appeal the said plaintiffs, *Blewett* and *Patrick Gaynor,* must be considered as the joint makers of the contract sued upon, and the money, if any, due upon said contract must be considered as due to the plaintiffs jointly.

The complaint sets up two causes of action,— one for the balances claimed to be due for cutting and putting in logs in the winter of 1883–4, and in the winter of 1884–5; and a second cause of action to recover damages of the defendant for preventing the plaintiffs from cutting and putting in other logs in the winter of 1884–5. This second cause of action is not involved in this appeal, as the trial court found against the plaintiffs as to that cause of action, and no appeal is taken by the plaintiffs from the judgment rendered in the action. The following is a copy of the contract upon which the action is brought, omitting the descriptions of the lands from which the logs were to be cut:

"This agreement, made and entered into this —— day of November, 1883, by and between *Patrick Gaynor,* of Chippewa Falls, Wisconsin, and *Edmund Blewett,* of the town of Oakfield, county of Fond du Lac, Wisconsin, parties

of the first part, and *James Gaynor*, of the city and county of Fond du Lac, Wisconsin, party of the second part, witnesseth: That the parties of the first part, for and in consideration of the payments and covenants hereinafter set forth, to be made and performed by the party of the second part, hereby agree, during the winters of 1883–4, 1884–5, 1885–6, 1886–7, to cut and put into the Burnette and main Chippewa rivers all the timber belonging to the party of the second part on all the lands hereinafter described; that they, the parties of the first part, agree that they will put in no other timber than that belonging to the party of the second part during said seasons. And the party of the second part hereby agrees to pay to the parties of the first part for all of said timber so cut and so put in from the following described lands, to wit [describing them], $3.50 per 1,000 feet, and for all of said timber so cut and so put in from the following described lands, to wit [describing them], at the rate of $4 per 1,000 feet; the timber upon the last-named lands to be estimated and agreed upon before being cut, and paid for on such estimate.

"And the said party of the second part agrees to pay during each winter of said years — that is, on the 15th days of January, February, and March — two dollars per thousand feet on the quantity of timber cut and put in at such times, and, on the closing of the season, when the camp shall be broken up, fifty cents per thousand feet on all the timber cut and put in up to that time; that is, $2.50 in all per thousand on all timber cut and put in. The balance due on the cut of each winter to be paid for in equal instalments on the 1st day each of June, July, August, and September, in each of the years 1884, 1885, 1886, and 1887.

[Signed]        "EDMUND BLEWETT.    [Seal.]
                "JAMES GAYNOR.      [Seal.]
" In presence of W. A. ELDREDGE."

The plaintiffs in their complaint allege, after setting out

the contract between the parties, as above stated, "that, under and in pursuance thereof and in performance of his undertaking therein, they cut and put into the said rivers parcel of the pine growing upon the said descriptions of land first above recited, and for which the defendant agreed to pay the sum of $3.50 per thousand feet as aforesaid, during the logging season of the years 1883 and 1884, a large quantity of logs, to wit, 7,818,160 feet, and thereafter, on the 12th day of September, 1884, these plaintiffs and the defendant had an accounting of and concerning the quantity of lumber cut by these plaintiffs under said contract during said winter of 1883-4, and of the payment made by the defendant thereon, and there was then and there found to be due and in arrears from the defendant to these plaintiffs the sum on such contract for such logging so done as aforesaid by these plaintiffs the sum of $3,087.07, with interest from the 1st days of June, July, August, and September, 1884, upon such proportion of the balance as became due and payable on said days respectively, that is to say, an equal one-fourth thereof. And the said defendant did then and there undertake and promise to pay the same to these plaintiffs; but, although often requested, he has not paid the same, nor any part thereof. And afterwards, in the winter of 1884-5, these plaintiffs, in further performance and fulfillment of the said contract on their part, off from the said lands first above described as aforesaid, in the $3.50 per thousand class, cut and put in a large quantity of said logs, to wit, 2,441,890 feet, and the said defendant has advanced and paid thereon, under said contract, the sum of $5,102.28 and no more, leaving remaining due and unpaid the sum of $3,444.33, with interest on an equal one-fourth part thereof from the 1st day of each of the months of June, July, August, and September, in the year 1885, and to pay the same or any part thereof the said defendant has wholly neglected and refused; but, on the contrary, here-

tofore, on or about the 20th day of June, 1885, the said defendant set up and pretended, and still pretends, that the sum so by him paid as last aforesaid, was in full for all the lumber cut and put in in the winter of 1884–5,— all of which is untrue.

To this complaint the defendant answered, admitting the making of the contract as set out in the complaint, and admitting that under said contract, during the logging season of 1883–4, the plaintiffs cut 7,818,160 feet, and during the season of 1884–5, 2,441,610 feet, but no more. The answer then further alleges "that for the cutting and hauling of the said timber during both of said seasons the defendant has fully paid the plaintiffs; that after the close of the logging season of 1884–5, the defendant had an accounting with the plaintiffs, and a full and complete settlement and adjustment of all matter and transactions arising from or growing out of said logging contract; and that at that time the defendant paid to the plaintiffs the full and complete balance found upon such settlement to be their due. And the defendant here pleads and alleges payment in full of the plaintiffs' demands under and by virtue of said contract. The defendant further alleges and charges the fact to be that the plaintiff *Edmund Blewett* is now prosecuting this action in the name of himself and *Patrick Gaynor*, plaintiffs, against the wishes and consent of said *Patrick Gaynor*, and that as a matter of fact said *Blewett* has himself received, as the proceeds of the logging business conducted by the plaintiffs during the two logging seasons,— 1883–4 and 1884–5,— more than the entire profits of the said logging business for the said two logging seasons; that a true and correct statement, as this defendant is informed and verily believes, of the moneys received and appropriated by said *Blewett* out of this defendant's payments on said logging contracts, and out of the moneys either paid directly by this defendant to said *Blewett* or paid for him and by

him credited and allowed on said contract, is hereunto annexed, marked 'Exhibit B,' and made a part of this answer. The defendant in further answering says that a true and correct statement of the moneys paid by this defendant, or paid for him, to the plaintiffs for the cutting and hauling of logs by the plaintiffs during said two logging seasons is hereunto annexed, marked 'Exhibit C,' and made a part of this answer; that said Exhibit C also contains a true and correct statement of other sums of money properly and justly applicable upon the said logging contract, and which statement shows that the plaintiffs are properly and justly chargeable with a sum largely in excess of the amounts they actually earned under said contract. The defendant, for a further answer to both causes of action set out in the plaintiffs' amended complaint, denies each and every allegation of said complaint, and every matter and thing therein contained, except as herein admitted, qualified, or explained."

The remainder of the answer sets up several counterclaims, in regard to which no evidence was given on the trial, and which were before judgment withdrawn from the consideration of the court. The case must therefore be determined upon the pleadings above set forth, and upon the testimony of the plaintiffs, who were both called by the plaintiffs and testified in the case. The defendant offered no witnesses to sustain the allegations of his answer, but relies solely upon the statements made by the plaintiff *Patrick Gaynor*, who was examined by the plaintiffs and cross-examined by the defendant.

The case was referred to a referee to hear, try, and determine the same. Upon the pleadings and evidence offered by the plaintiffs the referee decided that there was sufficient evidence to show a settlement and full payment of the plaintiffs' claims before the commencement of the action, and he rendered a judgment in favor of the defendant, dismissing the complaint with costs.

Upon the report of the referee, and all the evidence and proceedings in the action, the plaintiffs moved the court that the referee's report be altered and modified by setting aside and reversing the findings of fact and conclusions of law, and for judgment in favor of the plaintiffs for the sum of $6,531.40, with interest on the sum of $3,087.07 from September 1, 1884, and interest on the sum of $3,444.33 from September 1, 1885. Upon the hearing of this motion the learned circuit judge set aside the findings and judgment of the referee, and made the following findings of fact and conclusions of law, viz.: "(1) That during the month of November, 1883, the plaintiffs entered into a contract with the defendant for cutting and putting into the Burnette and main Chippewa rivers certain timber upon lands belonging to the defendant, for the sum of $3.50 per M., as more particularly appears by the written contract entered into between the parties, a copy of which is annexed to the amended answer herein; (2) that under and in pursuance of said contract the plaintiffs cut and put in, during the logging season of 1883 and 1884, 7,818,160 feet of logs from said timber of the defendant at the price aforesaid, and that under said contract, during the logging season of the years 1884–5, the said plaintiffs put in for the defendant 2,441,890 feet of logs from said timber of the defendant at said price; (3) that upon the amount thus earned by the plaintiffs in cutting and putting in logs during said logging season of 1883–4, the defendant paid the plaintiffs divers sums of money, so that the balance, as admitted by the plaintiffs' amended complaint, at the time of the commencement of the action was the sum of $3,000; (4) that upon the amount earned by the plaintiffs in cutting and putting in logs as aforesaid during the logging season of 1884–5 the defendant paid to the plaintiffs divers sums, admitted in said amended complaint, so that the balance for said last season's work, as claimed by the plaintiffs in said amended

complaint, was the sum of $3,444.33; that in addition to said payment on said second season's work, admitted by said complaint, the defendant paid to the plaintiff *Patrick Gaynor* thereon, some time during the year 1885, the sum of $500; (5) that no other payments upon or for any of said work were ever made by the defendant, as disclosed by the pleadings and the evidence; (6) that no evidence was offered by the defendant in support of any of the counterclaims of his answer; (7) that in and by the terms of the contract aforesaid all of the balance due for the logs cut and put in thereunder during the season of 1883–4 became due on or prior to September 1, 1884, and all of the balance due for logs put in by the plaintiffs during the season of 1884–5 under said contract, became due on or prior to September 1, 1885; (8) that the allegations of the plaintiffs' second cause of action are not sustained by the evidence."

And as conclusions of law therefrom the court finds " (1) that no settlement for said work and earnings of the plaintiffs under said contract was ever had between the parties, and no payment or satisfaction thereof made, except to the extent recited in the foregoing findings of fact; (2) that the plaintiffs are entitled to judgment against the defendant in the sum of $5,944.33, and interest on the sum of $3,000 from the 1st day of September, 1884, and interest on the sum of $2,944.33 from the 1st day of September, 1885, together with the costs of this action. It is therefore ordered by the court now here that the motion of the defendant to confirm the report of said referee and for judgment thereon, be, and the same hereby is, in all things denied. And it is further ordered that the motion of the plaintiffs to alter and modify said referee's report and for judgment thereon be, and the same hereby is, granted, and judgment is hereby ordered and directed in favor of the plaintiffs and against the defendant for the sum of $5,944.33, and interest on the sum of $3,000 from the 1st day of Sep-

tember, 1884, and interest on the sum of $2,944.33 from the 1st day of September, 1885, together with costs of this action."

Upon these findings judgment was rendered in favor of the plaintiffs against the defendant for the sum of $8,061.45 damages, and $53.08 costs. The defendant duly excepted to the findings of fact and conclusions of law made by the court. The defendant, before final judgment was entered, also moved the court to permit him to give further evidence on his part to sustain his defense. This motion was overruled and exception taken.

*Geo. E. Sutherland*, for the appellant.

For the respondents there was a brief by *T. W. Spence*, of counsel, and the cause was argued orally by *Mr. Spence* and *E. S. Bragg.*

TAYLOR, J. Upon this appeal the learned counsel for the defendant insists that the court erred in setting aside the findings and judgment of the referee, and in finding in favor of the plaintiffs and rendering judgment in their favor. They also allege as error the refusal of the court to permit the defendant to give further evidence in support of his defense, after the court had set aside the findings and judgment of the referee.

In order to intelligently consider the justice of the judgment in this case, it is necessary first to understand what is admitted by the pleadings in the case. After a careful consideration of the complaint of the plaintiffs and the answer of the defendant as to the plaintiffs' cause of action for cutting and hauling the logs in question under the contract, it is evident that, in the absence of any evidence on the part of either the plaintiffs or defendant, the plaintiffs would have been entitled to judgment for the sum of $3,087.07 as the balance due for the logs cut and put in in 1883–4, and for the further sum of $3,444.33 as the balance due for putting

in the logs in 1884–5.   Possibly the value of putting in 280 feet should be deducted from this last sum, as the defendant does not admit the cutting and putting in this amount claimed by the plaintiffs.   Plaintiffs claim 2,441,890 feet, and the defendant admits but 2,441,610 feet.   This variation is too inconsiderable to affect the judgment in the case.   Upon the pleadings the case stands in this condition: The plaintiffs allege the cutting and putting in of logs under the contract in both seasons to the amount of 10,258,050 feet at $3.50 per thousand, amounting in all to the sum of something over $35,500 due the plaintiffs by the terms of the contract for the work done, and the plaintiffs admit it has all been paid for except as to the sum of about $6,530.   The defendant admits the amount of work done, and the contract price, and further claims that he has paid the whole amount due for the plaintiffs' work under the contract.   In this state of the pleadings it seems to us very clear that the burden of proof is on the defendant to show that he has paid the plaintiffs' claim in full, or else judgment must go against him for the amount which he fails to show has been paid, not exceeding the amount claimed to be due by the plaintiffs.

This proposition is not contended against as to the amount claimed to be due for the second winter's work, but the counsel for defendant maintains that, because the plaintiffs allege in their complaint that as to the work done in the season of 1883–4 there was an accounting and a balance agreed upon, which the defendant promised to pay, the plaintiffs must prove such an accounting and settlement in order to recover the amount claimed as due for that year's work.   We cannot take this view of this pleading.   The facts stated in that part of the complaint show the amount of money due to the plaintiffs for the first winter's work to be over $27,000, and the statement as to the accounting simply amounts to an admission that it has all been paid

except the sum stated as remaining due and unpaid. It is simply an admission as to part payment, and does not turn the pleading into an action solely upon an account stated. The answer of the defendant does not specifically deny the fact that that amount was due to the plaintiffs for the first year's work, unless the general denial which follows the allegations of payment in full for the amount due for both seasons' work shall be considered such denial. I suppose it will not be contended that where a plaintiff brings an action for work done at a given price, when the work is admitted to have been done and the price for doing it is also admitted, it would be necessary for him to prove that his claim had not been settled and paid, because he had alleged that fact in his complaint. Upon the pleadings alone it is clear that the plaintiffs are entitled to a larger judgment than the judgment rendered in this case by the circuit court.

The learned counsel for the appellant insists if it be admitted that in the absence of any proofs by either party the plaintiffs should recover, then, upon the testimony given on the trial by *Patrick Gaynor*, the judgment should have been in favor of the defendant, and that the learned circuit judge erred in reversing the decision of the referee upon the question of a final settlement and payment by the defendant of all claims of the plaintiffs for the work done under the contract.

After carefully looking over the evidence given on the subject of the settlement and payment for the entire work done under the contract, we conclude that the learned circuit judge was right in setting aside the findings of the referee on that subject. There is no evidence given by the plaintiff *Blewett* on the subject of settlement, except as to the first season's work, and as to that he simply testified, in answer to certain questions, as follows: " Question. At this time had the business of the former year been settled

Blewett and another vs. Gaynor.

up, that is, had he [meaning defendant] paid for what
you claimed to be the balance for the first season's busi-
ness? Answer. No, sir. Q. At that time, what did you
claim was the balance of the old business? A. Something
over $3,000. Q. What did you claim to *Mr. Gaynor* that the
balance was, or had you figured it together? A. Yes, we
had, three thousand and some odd dollars. Q. That is the
figure you claim in figuring it out with him? A. Yes, sir.
Q. A part of which he disputed? A. Yes, sir. Q. There
were some items in the old business that he claimed as off-
sets that you would not allow? A. Yes, sir. Q. But on
your claim to him it was something over $3,000? A. Yes,
sir." The time referred to in this evidence was early
in the fall of 1884. The plaintiff *Blewett* was not cross-
examined at all by the defendant in regard to this testi-
mony. Upon the final cross-examination of *Blewett* the
following questions were put to and answered by him:
" Question. You understand that *Mr. James Gaynor* settled
with your partner, don't you, for both years' logging? An-
swer. I never understood so. Q. Did you understand that
they have settled all these matters? A. I did not. I have
never understood that the first winter's logging was settled
for. Q. Never have understood that they have had any
settlement, then? A. No, sir; not for that one, any more
than what *James* told me that spring that he had settled
with *Pat*. Q. Then you did understand that he had settled
with *Pat*, didn't you? A. For that winter I understood
he claimed he had settled with him. Q. Didn't you under-
stand he claimed he had settled for both winters? A. No,
sir; I didn't. Q. Don't you understand that has been done?
A. No, sir. I know nothing of the kind. Never heard
anything about it. I never heard that *Pat* and *Jim* had
had a complete settlement of both winters' logging."

The testimony of the plaintiff *Blewett* covers nearly
eighteen pages of the case, and what is above quoted is all

that in any way relates to any settlement of the claims of the plaintiffs against the defendant. All the other testimony of this witness was evidently introduced to sustain . the plaintiffs' claim for damages under their second cause of action, which was disallowed by the court.

It is very clear that the testimony of *Blewett* does not in any way sustain the contention of the appellant that the claims of the plaintiffs were settled and paid for before this action was commenced, and no claim is made that the settlement was proved by the testimony of *Blewett*. But the counsel for the plaintiffs put the plaintiff *Patrick Gaynor* on the stand as a witness in their behalf, and he was examined and cross-examined at great length. His testimony covers about thirty pages in the printed case. The plaintiffs evidently put this plaintiff on the stand mainly for the purpose of producing testimony to sustain their second cause of action for damages on account of the alleged refusal of the defendant to permit the plaintiffs to put in a larger quantity of logs in the season of 1884–5, and it will also be seen by a careful reading of his testimony that the plaintiffs did not question him at all in relation to any settlement or adjustment of the claims of the plaintiffs against the defendant, except such as had arisen out of the logging which was done the second season. It is not very apparent why the learned counsel for the plaintiffs examined this plaintiff upon the subject of settlement at all. But it is clear that he did not examine him at all as to any settlement, except as to the second season's business, and what was said by this witness as to a general settlement of all claims of the plaintiffs for all work done under the contract was called out on the cross-examination by the counsel for the defendant.

The question upon this appeal is whether the evidence of this witness, who though a party plaintiff is such party unwillingly on his part, and forced upon the other plaintiff by

defendant, is conclusive that there was a fair settlement between the plaintiffs on the one part, and the defendant on the other, of all these claims. It is true, the witness says there was a settlement which was satisfactory to him, and that he gave a receipt in full; but he is unable to state how the accounts were adjusted, or how the admitted claims of the plaintiffs were adjusted and paid by the defendant. The admissions of the defendant upon the record show that the claims of the plaintiffs were not paid for in full by the defendant in money payments. His account rendered shows that the actual payments made were several thousand dollars less than these admitted claims, and, in order to satisfy them, it would be necessary that he should be allowed a large sum by the way of his counterclaims for rent of outfit, and for using up and the destruction of such outfit, and for other claims made against the plaintiffs for breaking roll-ways, which claims were disputed by the plaintiff *Blewett*, and which are set up as counterclaims in this action. The evidence of the plaintiff *Patrick Gaynor* as to a settlement of these claims and payment of them is simply a general statement that the settlement was made. The witness is unable or unwilling to state what claims of the defendant were allowed on such settlement, how they were settled, and how much was paid on such claims by the plaintiffs, or whether, in consideration of such agreement of settlement, the defendant released his claims against the plaintiffs upon the counterclaims set out in his answer in this action. He simply says he settled and gave a receipt in full, and can give no statement as to what was allowed in such settlement on either side, except that $500 was afterwards paid to the witness by the defendant in pursuance of such settlement. The defendant did not produce the receipt which the plaintiff *Patrick Gaynor* says he gave on such settlement.

We think the law is very plain that a settlement made by one of two partners of a claim due the partnership

must be a fair and reasonable settlement in order to bind the firm, and, if the settlement be in fraud of the firm or of one of the partners of the firm, it will not defeat the action of the firm. 1 Collyer on Partn. (6th ed.), 675; 2 id. 975; *Barker v. Richardson*, 1 Younge & J. 362; *Phillips v. Clagett*, 11 Mees. & W. 84; *Viles v. Bangs*, 36 Wis. 140; *Cotzhausen v. Judd*, 43 Wis. 216, 217. We think the learned circuit judge was fully justified in holding that this evidence was insufficient to justify a court or jury in finding that any settlement was in fact made, and especially that a fair and honest settlement had been made between the defendant and *Patrick Gaynor*, of the claims of the plaintiffs against the defendant. That the defendant did not rely with great confidence on the fact that a settlement of all their controversy had been made is evident from the fact that he pleaded his counterclaims in this action, and asked the judgment of the court on each of them. Considering the general statements of the witness as to the settlement, and the failure of the witness to give any intelligent statement as to what took place when such settlement was made, and the fact that the witness, although a party plaintiff, was clearly in the interest and to a considerable extent under the control of the defendant, the evidence of settlement of all the plaintiffs' claims was not so clearly established as that a court or jury were bound as a matter of law to find that such settlement was in fact made. At best it can only be said that there was evidence which, if believed, tended to show a settlement, and it was still a question of fact for the court or jury to find either for or against the fact of settlement. We are satisfied with the finding of the learned circuit judge upon that point.

It is urged by the learned counsel for the defendant that as to the plaintiff *Patrick Gaynor*, he ought not, on his own statement, to be entitled to recover in this action, and that the judgment should only have been in favor of the plaint-

iffs for one half their claims.   There would be force in this contention if it were established that, as between the two plaintiffs, each was entitled to one half the sum due from the defendant; but their rights as between themselves are not shown by the evidence in this case.   And if it should upon investigation be shown that *Patrick Gaynor*, as between himself and *Blewett*, was entitled to one half of the sum due them from the defendant, or more or less than one half, the defendant could probably limit the plaintiff *Blewett* in collecting the judgment to the amount which was actually due him from the defendant as between himself and *Patrick Gaynor*, upon his obtaining a release of the judgment by *Patrick Gaynor*, or by some proper proceeding to satisfy the judgment.

The learned counsel for the appellant insists that the judgment should be reversed because the circuit court refused to permit the case to be opened for the receipt of further testimony on the part of the defendant.   This motion is one peculiarly addressed to the discretion of the trial judge, and his determination is conclusive unless it clearly appears that injustice will be done to the defendant by refusing to open the case and receive the evidence offered. As the defendant was permitted to withdraw all his counterclaims, and as the judgment is not greatly in excess of the amount admitted to be due upon the contract, exclusive of such counterclaims, and as it clearly appears that the defendant still has it in his power to limit the enforcement of the judgment to the amount actually due to the plaintiff *Blewett* on the contract as between himself and *Patrick Gaynor*, we do not see that any great injustice is likely to result from the refusal of the learned judge to open the case for further proofs.   We must therefore decline to reverse the judgment for that cause.

*By the Court.*— The judgment of the circuit court is affirmed.