MACK, by Guardian *ad litem,* and another, Plaintiffs and
Respondents, v. DECKER, Defendant and Respondent:
TAFT and another, Defendants and Appellants.

*April 29—June 2, 1964.*

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

For the respondents there was a brief by *Charles J. Herro* of Oconomowoc, and *Robert T. McGraw* of Waukesha, guardian *ad litem,* and oral argument by *Mr. McGraw.*

CURRIE, C. J.   Appellants make these contentions on this appeal:

(1) There is no credible evidence to support the jury's finding that defendant Taft was causally negligent in stopping his automobile on a public highway.

(2) If this court finds that there is credible evidence to support such finding, a new trial must be had because of prejudicial error.

The second contention is predicated on the refusal of the trial court to admit into evidence a written statement subscribed by plaintiff Patricia Mack, and on the instructions to the jury.

*Jury Issue With Respect to Taft's Alleged Negligence.*

A determination of this issue requires a review of the pertinent evidence.

The accident occurred on a clear, warm afternoon in late June.   The traveled portion of the highway is surfaced with blacktop with a marked center line and runs in a general easterly and westerly direction.   A bathing-beach area along

the north shore of Silver lake extends along the south side of the road, while to the north stands a building, housing a roller-skating rink. To the west of the scene of the accident is a hill over which the highway passes. Witnesses estimated the distance from the crest of the hill to the point of impact was from 165 to 400 feet.

At the time of the accident Patricia Mack was fifteen years of age and Decker was several years her senior. For a quarter to half a mile prior to the accident the Decker motorcycle, on which Miss Mack was a passenger, had been following the Taft automobile. Both were going in an easterly direction. As the Taft car went over the crest of the hill the motorcycle was 200 to 300 feet to its rear. No witness placed the speed of either vehicle from this time to the occurrence of the collision at more than 20 to 25 miles per hour. Slightly west of the top of the hill are two traffic signs for vehicles proceeding in an easterly direction. The first read "Slow Pedestrian Crossing" while the second read "No Parking on Highway." The "Slow Pedestrian Crossing" sign obviously referred to the beach area where the accident occurred, although there does not appear to have been a marked crosswalk there.

Taft testified: As he came over the crest of the hill he saw two small children, whom he described as "toddlers," on the south portion of the roadway, proceeding northerly. He gradually brought his car to a stop about 10 feet from the point where these children were crossing. In the meantime, another small child had come onto the south portion of the roadway followed by a lady. The latter child was directly in the path of the car when the collision occurred. The first point in time at which he was aware of the approach of the motorcycle was when he heard a screech made by the application of the motorcycle's brakes. He then looked in his rearview mirror and saw the motorcycle coming directly at his car. He estimated that the collision occurred anywhere

from twenty-five to forty seconds after he brought his car to a stop, and that it is possible it could be longer than that. It is undisputed that application of the car's brakes activated the rear lights.

Taft's version of the accident is corroborated by the disinterested witnesses. One of these was the beach lifeguard who at the time was seated at a picnic table close by. All witnesses, including Miss Mack and Decker, testified that Taft had stopped his car in his own traffic lane. The north half of the roadway was completely open and there was no traffic approaching from the opposite direction.

Decker testified that prior to the collision he had glanced across the lake to look at a radio tower. He then looked back at the road but did not realize Taft's car was stopped until he was 50 to 75 feet away. He then slammed on his brakes and tried to go around the right of the stopped car. The rear of the motorcycle swerved to the left or north and went forward sidewise, striking the right rear bumper of Taft's car. In other testimony Decker stated that when he looked back after glancing at the radio tower he did not know whether the Taft car was then moving, and did not know how the car was brought to a stop. He positively testified, however, that he did observe that "there was nothing there" in front of Taft's car.

The police officer who investigated the accident testified that Decker stated after the accident that: "He [Decker] was traveling east on County Trunk BZ at approximately twenty, twenty-five miles an hour when he was looking across the lake at a radio tower, and all of a sudden he looked back and here this car stopped in front of him. He applied his brakes and tried to swerve to the right to go around him [the Taft car] but struck the bumper of the car."

Patricia Mack testified as follows: She saw the Taft car ahead of the motorcycle for about one-half mile before the accident. The car disappeared over the hill, and she glanced

at a radio tower across the lake. When she again looked back, the Taft car was still in motion 30 to 50 feet ahead, but its rear taillights (those activated by the brakes) were on. It stopped "real quick." She also saw a lady and some children on the right or south gravel shoulder of the road but no pedestrians were then crossing the road. Patricia Mack also testified that: Decker slammed on the brakes of the motorcycle and that it started to skid. Miss Mack was thrown off as the motorcycle slid into Taft's stopped car. She places the scene of the accident about 400 feet east of the crest of the hill.

It is conceded by the parties that if Taft stopped his car on the south half of the paved portion of the highway because of children then crossing or attempting to cross the highway, such momentary stopping would not violate secs. 346.51 (1) [1] and 346.53,[2] Stats. These parking statutes

[1] Sec. 346.51 (1) provides in pertinent part as follows:

"(1) No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon the roadway of any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway, but even the parking, stopping or standing of a vehicle off the roadway of such highway is unlawful unless the following requirements are met:

"(a) An unobstructed width of at least 15 feet upon the roadway of such highway must be left opposite such standing vehicle for the free passage of other vehicles; and . . .

"(b) Such standing vehicle must be capable of being seen by operators of other vehicles from a distance of 500 feet in each direction along such highway."

[2] Sec. 346.53 provides in pertinent part as follows:

"PARKING PROHIBITED IN CERTAIN SPECIFIED PLACES. No person shall stop or leave any vehicle standing in any of the following places except temporarily for the purpose of and while actually engaged in loading or unloading or in receiving or discharging passengers and while the vehicle is attended by a licensed operator so that it may promptly be moved in case of an emergency or to avoid obstruction of traffic:

". . .

"(6) Upon any portion of a highway where and at the time when parking is prohibited, limited or restricted by official traffic signs."

were not intended to cover a motorist stopping under such circumstances. *Reuhl v. Uszler* (1949), 255 Wis. 516, 524, 39 N. W. (2d) 444. See also, 2A, Blashfield, Cyc. Automobile Law and Practice (perm. ed.), p. 398, sec. 1495.

The great weight of the evidence is to the effect that Taft did stop his car and remained stopped because of the presence of children crossing and about to cross the highway. Such evidence alone would preclude a finding of negligent stopping on Taft's part. Both Decker and Patricia Mack, however, testified that there were no children on the roadway in the path of the Taft car at the time Taft stopped, although Patricia Mack admitted seeing a lady and some children on the south shoulder. The credibility of the parties' testimony was for the jury. If the jury believed this testimony, a jury issue was then presented as to whether Taft violated secs. 346.51 and 346.53, Stats., in stopping on the highway. The applicable test is whether a man of ordinary prudence similarly situated would reasonably conclude that the safety of the children present in the immediate area required that he then stop his car. If he would not so reasonably conclude, then the act of stopping violated these statutes and constituted negligence. Even a temporary stop may constitute a violation of these statutes. *Jeffers v. Peoria-Rockford Bus Co.* (1957), 274 Wis. 594, 80 N. W. (2d) 785, and *Vidakovic v. Campbell* (1956), 274 Wis. 168, 79 N. W. (2d) 806.

Appellants urge that there is no evidence in the record that sec. 346.51, Stats., was applicable because of the absence of any testimony establishing that the accident occurred outside of a business or residence district.[3] Our review of the evidence discloses sufficient proof that it did occur outside of both a business district and a residence district.

---

[3] "Business district" and "residence district" for the purposes of sec. 346.51 are defined in subs. (6) and (50) of sec. 340.01, Stats.

Therefore, we conclude that this court cannot hold that there was no credible evidence to support the jury's finding that Taft was negligent in stopping his car where he did even though this court might not have so found, had it been the trier of fact.

*Admissibility of Patricia Mack Statement.*

During the cross-examination by appellants' counsel Patricia Mack was shown a written statement purporting to give her version of the accident. The statement consisted of one page and a portion of a second page, both of which were subscribed "Patricia Mack" and witnessed by one Zimmerman. The statement was dated June 29, 1959. Miss Mack was asked if the signatures were hers; she admitted they were. She was then asked this question and gave this answer thereto:

"*Q.* Now, I ask you, Miss Mack, if it is not true that on the 29th day of June, 1959, you made the following statement to Mr. John P. Zimmerman, who wrote it down and asked you to read this and sign it, did you not at that time tell him your name was Patricia Mack? *A.* I don't remember reading this, I don't remember this at all."

The trial court then sustained an objection to appellants' counsel reading from this statement in questioning the witness. At the conclusion of the cross-examination appellants' counsel offered the statement in evidence, but the trial court excluded it.

Miss Mack was confined in a hospital at the time the statement was signed by her and she testified that while in the hospital she had been given sedatives for pain. Her mother, Mrs. Mack, during the course of the trial, testified that on the afternoon of June 29, 1959, an insurance man (referring to Zimmerman) had come to the hospital and had gone into Patricia's room. Mrs. Mack remained in the

waiting room. Mrs. Mack further testified that after he left she asked Patricia whether she had given him a statement and Patricia replied, "No." Mrs. Mack further stated that Patricia had been given sedatives "that afternoon." The hospital records, however, disclosed that the administration of sedatives had taken place before 8:15 o'clock that morning and not in the afternoon. At 11 in the morning the nurse had noted that Patricia was writing letters, at 2 o'clock in the afternoon she was visiting, and at 3 o'clock the notation was, "comfortable day."

The excluded statement contradicted Patricia Mack's testimony given at the trial. At the trial she testified that when she saw Taft's car, after glancing at the radio tower, there were no pedestrians then crossing the highway. In the statement, however, she stated that the car had stopped for some pedestrians.

The admissibility of the statement is governed by *Jensen v. Heritage Mut. Ins. Co.* (1964), 23 Wis. (2d) 344, 352, 127 N. W. (2d) 228. Patricia Mack's testimony that the two signatures on the statement were hers constituted sufficient authentication to entitle the statement to be admitted. Her testimony that she could not recall giving or reading the statement, and the conflicting evidence as to whether she was under sedatives at the time she signed it, go to the weight to be accorded the statement, not its admissibility. It was, therefore, error to have excluded the statement.

*Instructions to the Jury.*

The trial court included the following paragraph in the instructions to the jury:

"You are further instructed that the point between the Silver Lake Beach and the Silver Lake Roller Rink at or about the point of the accident was neither a marked or unmarked pedestrian crosswalk as defined by law. You are further instructed that where there is no marked or un-

marked pedestrian crosswalk, the pedestrian is required to yield the right of way to vehicles upon the roadway."

The giving of this instruction had the likely effect of telling the jury that, even if the jury found that there were no children directly in the path of the Taft car at the time it stopped but there were children on the shoulder of the road as testified by Patricia Mack, Taft was negligent for stopping because he had the right-of-way.

It was error to give this instruction under the facts of this case. The issues before the jury were not concerned with the possible negligence of the children. Ordinarily a motorist has a right to some reliance on the fact that, where he has the right-of-way, pedestrians will observe their statutory duty to yield. *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123, and *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205. However, there is no such right of reliance where the pedestrians are small children. In *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. (2d) 499, 508, 117 N. W. (2d) 666, it was held that this reliance "has no basis in fact when an autoist sees a child who cannot be held guilty of negligence for failing to yield the right-of-way." The same principle is deemed applicable to all small children of tender years even though over the age of seven years.[4] This is because of the known propensities of such children to dart across a highway in the path of an oncoming motor vehicle even though the latter has the right-of-way.

The trial court also refused to give an instruction requested by appellants with respect to the special duty which a motorist has in the presence of children on or near a highway. This requested instruction was framed in the language of Wis J I—Civil, Part I, 1045, as follows:

---

[4] Sec. 328.44, Stats., provides that an infant who has not reached the age of seven is conclusively presumed to be incapable of contributory negligence.

"Drivers of motor vehicles are chargeable with the knowledge that children of tender years do not possess the traits of mature deliberation, care, and caution of adults. The driver must increase his vigilance if he knows, or in the exercise of ordinary care should know, that children are in, or are likely to come into, his course of travel."

In view of Patricia Mack's own testimony that she observed children on the gravel shoulder, it was error not to give this instruction. On this point we deem pertinent the following statement made in *Ruka v. Zierer* (1928), 195 Wis. 285, 291, 218 N. W. 358:

"Children of tender years do not possess the traits of deliberation, care, and caution. These are traits which are acquired by age. This is a law of nature. This fact cannot be ignored by those who operate dangerous agencies in the presence of children.
"The defendant [motorist] in this case saw these children playing upon the sidewalk when he was 200 feet distant. He was at once charged with a degree of responsibility for their safety from any damage resulting to them from the operation of his automobile. This responsibility did not extend to that of an insurer of their safety. But it did hold him to the exercise of a high degree of care. From that time their safety should have been the subject of his anxious solicitude until he had safely passed them. He was charged with a knowledge of childish traits. To hold him to an anticipation that some one of them, in the course of their play, might suddenly dart out into the street is not at all unreasonable."

The instruction with respect to the prohibitions and restrictions on parking of sec. 346.51, Stats., concluded with this sentence:

"The words, 'parked' or 'stopped,' in this section refer also to a mere temporary halt, unless the traffic lane ahead of the stopped vehicle is blocked."

In light of what has already been stated herein with respect to the care which Taft owed to children on, or in

close proximity to, the paved portion of the highway, this quoted sentence is unduly restrictive. The phrase commencing with the word "unless" should have been couched in substantially this language, *i.e.,* "unless such temporary stop is occasioned by the exercise of due care to pedestrians crossing the highway or to small children in close proximity to the traveled portion thereof."

We find one further portion of the instructions of which we disapprove. This consists of the last sentence of the following instruction:

"You are further instructed that the driver of the front car owes no duty to the driver of the car behind him except to use the road in the usual way, in keeping with the laws of the road; and until he has been made aware of the car behind by signal or otherwise, he has a right to assume either that there is no other automobile or other motor vehicle in close proximity to his rear or that being there, it is under such control as not to interfere with his free use of the road in front of and to the sides of him in any lawful manner. However, if the driver of the front car intends to deviate from his course of travel or suddenly stop or decrease his speed in such a manner that would create a hazard to a vehicle following in a lawful manner, he must then exercise ordinary care to make a lookout to the rear before making such movement."

There was no evidence of any deviation by Taft but the testimony is undisputed that he brought his car to a stop in the south traffic lane. Under these facts there was no requirement that Taft exercise lookout to the rear before stopping where the application of his car brakes activated the red car taillights. *Tesch v. Wisconsin Public Service Corp.* (1957), 2 Wis. (2d) 131, 136, 85 N. W. (2d) 762.

*Prejudicial Character of Errors.*

We now pass on to the question of whether the erroneous ruling excluding the Patricia Mack statement and the errors

in instructions were prejudicial to appellants so as to require the ordering of a new trial. We cannot escape the conclusion that these errors probably affected the jury's answer to the question of the verdict which inquired whether Taft was negligent in stopping his car on a public highway. There are three factors which impel us to the conclusion that these errors probably had this result. First, some of the errors in the instructions were of a character which would be likely to influence a jury in the direction of finding Taft negligent. Second, this finding of negligence is against the great weight of the evidence. Lastly, the jury only attributed 15 percent of the aggregate negligence to Taft, thus indicating that it would not have taken much to tip the scales the other way and find him not negligent.

Thus, we conclude that a new trial is necessitated by the errors which occurred. The new trial will be ordered on all issues inasmuch as plaintiffs have so requested.

*By the Court.*—The judgment is reversed and the cause is remanded for a new trial not inconsistent with this opinion.