DIENER, Plaintiff and Respondent, v. HERITAGE MUTUAL INSURANCE COMPANY and another, Defendants and Appellants: MID-CENTURY INSURANCE COMPANY and another, Defendants and Respondents.

*November 27—December 29, 1967.*

412

For the defendants-appellants there was a brief by *Holden & Halvorsen* of Sheboygan, and oral argument by *Robert N. Halvorsen.*

For the plaintiff-respondent there was a brief by *Bonk, Lutz & Hertel* of Chilton, and oral argument by *Robert W. Lutz.*

For the defendants-respondents there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *James L. Everson.*

HALLOWS, J. Hare claims the causal negligence of Diener was a superseding cause of the plaintiff's injuries and the trial court abused its discretion in permitting Diener after the evidence had been closed to testify for the purpose of correcting his previous testimony.

On the afternoon of April 30, 1964, the defendants, as members of a funeral procession, were traveling east on Highway 10 in Calumet county. The procession was led by an automobile driven by Glenn Hall; the second car was the hearse driven by Hare, the funeral director; then followed Diener driving his own automobile and several other cars not involved in the collision. Just before the collision, the procession was moving at about 50 miles per hour with four or five car lengths separating the lead car and the hearse, and five or six car lengths separating the hearse and the Diener automobile. The procession came upon a school bus which was facing west on the opposite side of the highway and was either coming to a stop or had stopped. The leading Hall car came to a stop before it reached the front of the bus. Hare, in the hearse, noticed the brake lights on the Hall car but hesitated for three or four seconds before applying his brakes. It was then a panic application which left skid marks for 33

feet and caused smoke to arise from the tires, but the hearse rear ended the Hall car.

Hare was aware that the Diener automobile with its occupants was rather close behind him. In fact, Diener in following the hearse was going slightly faster than the hearse to close the gap and was about five to six car lengths, or about 96 feet, behind the hearse. When Diener realized the hearse's brake lights were on and saw its tires smoke, he applied his brakes lightly and continued to overtake the hearse. He testified he did not brake harder because he was afraid of the cars to his rear and of causing a chain-reaction collision. When Diener was within one or two car lengths of the hearse and in order not to rear end it, he swerved his car off the highway onto the right shoulder and he was passing the hearse when it struck the Hall car. In passing the hearse, Diener struck a mailbox which was on the grass edge of the shoulder, but the plaintiff's whiplash injury to her neck was allegedly received from the swerving of the Diener car.

On his adverse examination and at the trial on direct and cross-examination, Diener testified he was going five miles per hour when he swerved his car off the highway. After the parties rested, Diener was permitted to reopen his case. He stated he wished to correct his prior testimony and he testified his speed was not five miles per hour but about 25 miles per hour. He based his new estimate on a test he had made during the trial in his automobile which was a different automobile than that which was involved in the accident.

Hare admits he was causally negligent in rear ending the Hall car but claims he was not negligent as to the plaintiff and her injuries were solely due to the intervening and superseding negligence of her husband in operating his car. Diener argues his negligence was a concurrent cause with Hare's negligence because the injuries to the plaintiff occurred within a few seconds following Hare's negligence in respect to lookout and management and control.

We think the jury was correct in finding Hare causally negligent as to the plaintiff's injuries. While this is not a case of tandem driving with mutual stimulation as in *Ogle v. Avina* (1966), 33 Wis. 2d 125, 146 N. W. 2d 422, which dealt with the comparison of causal negligence of two negligent drivers, nevertheless, driving in a procession creates special hazards. Hare was aware that Diener was closely following him in the funeral procession and owed him and the occupants of his car a duty not to create an unreasonably harmful situation by his driving. This is not a question of whether Hare owed any duty to Diener in respect to lookout to his rear because he had knowledge of Diener's presence. Hare was negligent, however, in that he did not have his hearse under such control as to allow him to come to a stop without creating a hazard to the following Diener car. Hare was faced not with an emergency but with the obligation to stop when Hall began to slow down and stop for the school bus. At that time his duty was to stop without injuring Hall and in such a manner as not to create a hazard to the cars coming from his rear. If Hare could not do this he was either following Hall too closely for his speed or he did not apply his brakes soon enough, or both. This manner of driving was negligent both in respect to Hall and also to those who followed him. Hare's delay in applying his brakes for three or four seconds had the effect of shortening the braking distance of Diener and of creating a situation which would prompt some reaction upon Diener's part. This was reasonably foreseeable on Hare's part and constituted negligence under the doctrine of *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372.

That a driver of an automobile has a duty to those to his rear under some circumstances is not new. We have held that a motorist has a duty of making an observation to the rear to see if he can stop or slow down on a highway with safety. *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626. In *Bentzler* we pointed out and

distinguished those cases in which the primary responsibility of the driver under existing circumstances was to keep his lookout ahead. See *Statz v. Pohl* (1954), 266 Wis. 23, 62 N. W. 2d 556; *Tesch v. Wisconsin Public Service Corp.* (1957), 2 Wis. 2d 131, 85 N. W. 2d 762; *Jacobson v. Greyhound Corp.* (1965), 29 Wis. 2d 55, 138 N. W. 2d 133; *Thoresen v. Grything* (1953), 264 Wis. 487, 59 N. W. 2d 682. But in *Bentzler,* where lookout to the front was not preempted, we required lookout to the rear for stopping and found negligence because the driver did not look and the stopping was made without activating his red taillights. In normal cases where taillights are activated and sufficient, we have held the duty to exercise a lookout to the rear has been fulfilled. *Mack v. Decker* (1964), 24 Wis. 2d 219, 128 N. W. 2d 455; *St. Clair v. McDonnell* (1966), 32 Wis. 2d 469, 145 N. W. 2d 773.

However, Hare was making no normal stop and his activating taillights were not sufficient warning for Diener behind him to make a safe stop of his car considering the traffic behind him or at least as the situation appeared to Diener.

Diener argues his negligence and that of Hare are concurrent causes while Hare argues Diener's negligence was an intervening and superseding cause. To be a superseding cause, the cause must first be an intervening force. For many years this court has been committed to the definitions of concurrent, intervening, and superseding causes in the Restatement of Torts. A "concurrent cause" is defined in Restatement, Torts 2d, p. 464, sec. 439, as, "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability;" on page 465, in sec. 441 (1), an "intervening force" is defined as, "An intervening force is

one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *See Foellmi v. Smith* (1961), 15 Wis. 2d 274, 112 N. W. 2d 712.

It is not necessary that the two forces be absolutely simultaneous if they are substantially so. In comment *a* in sec. 439, Restatement, Torts 2d, p. 464, it is stated that it is enough that the two forces are in substantially simultaneous act, as "when the effect of the conduct of one or the other has ceased its active operation immediately before the other's conduct takes active effect in harm to the other." We think, however, Diener's action was an intervening force because it was set in motion after Hare's negligent conduct which created the danger was committed. This was his failure to timely apply his brakes and thus give warning to Diener. Diener's intervening negligence was dependent and actively operated in response to and as a reaction to the stimulus of the situation which Hare created by his negligence. Of course, both Hare's negligence and Diener's negligence "concurred" in the sense they were both substantial facts in contributing to the plaintiff's injury but that is not the test of a concurrent cause under sec. 439.

In sec. 440, Restatement, Torts 2d, p. 465, a "superseding cause" is defined as, "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." This definition is in terms of effect. But secs. 442 to 453, inclusive, set forth the rules to be used in determining when an intervening force is not superseding in nature. In sec. 443 one of the important considerations in negating the superseding nature of an intervening cause is its character of being a normal response to the stimulus of a situation created by the first actor's negligent conduct. This section was followed at an early date in *Kramer v. Chicago, M., St. P. & P.*

*Ry.* (1937), 226 Wis. 118, 276 N. W. 113, and also in *Hatch v. Smail* (1946), 249 Wis. 183, 23 N. W. 2d 460.

A special application of this section is found in sec. 445 relating to acts of protection from danger threatened by an actor's negligence. This section provides, "If the actor's negligent conduct threatens harm to another's person, land, or chattels, the normal efforts of the other or a third person to avert the threatened harm are not a superseding cause of harm resulting from such efforts."

This court has also applied sec. 447 where the intervening act has been one of negligence to determine whether it was a superseding cause.[1] It is to be noted that in this section sub. (c) seems to be a special application of sec. 445 where the normal consequences constitute negligence. Sec. 447 was applied in *McFee v. Harker* (1952), 261 Wis. 213, 52 N. W. 2d 381, to a fact situation which constituted a normal response to the stimulus of a situation caused by the defendant's negligence as is covered more generally in sec. 443 of the Restatement, Torts 2d. The court has also applied sec. 447 in *Dombrowski v. Albrent Freight & Storage Corp.* (1953), 264 Wis. 440, 59 N. W. 2d 465; *Ryan v. Cameron* (1955), 270 Wis. 325, 71 N. W. 2d 408; *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 114 N. W. 2d 823; *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. 2d 571, 127 N. W. 2d 741.

---

[1] "Negligence of Intervening Acts

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

We think the evidence discloses a situation of causal negligence on the part of Hare which created a situation which stimulated Diener to react normally and would thus bring the case under sec. 443. When we consider the acts of Diener, they were primarily efforts to avoid a threatened harm created by the sudden stopping of the hearse and Diener's action in braking his car and running off of the highway under the circumstances was a normal effort and therefore not a superseding cause, although negligent.

It is argued that Diener could have stopped his car on the highway before reaching the hearse and his swerving the car off the highway was extraordinarily negligent and constituted a superseding cause under sec. 447(c). Diener argues he could not stop on the highway, but this is immaterial as Diener did not attempt that course of conduct because he was afraid of being rear ended by the cars behind him. He chose rather to turn off the paved portion of the roadway just before reaching the rear of the hearse, and in swerving the car his wife's neck was injured. Although almost the same sort of situation confronted Hare in the hearse, he chose to rear end Hall's car. We think Diener's swerving his car off the highway was a normal reaction to the dangerous situation confronting him. That he might have done something else does not relieve Hare. Under the circumstances, the turning off the highway just before reaching the hearse does not constitute extraordinary negligence.

After the parties had presented their evidence and rested, Diener was permitted to give what was initially called rebuttal testimony. The purpose of his testimony was to correct his prior testimony of his speed when he swerved off the highway to avoid striking the hearse. He testified that as a result of tests he performed with his car in driving off the highway he believed he was traveling about 25 miles per hour instead of five miles per hour as he had previously testified. The testimony was admitted over Hare's objection that the test was not

comparable because the test was made with a different auto than that involved in the accident, and he was allowed to cross-examine.

There is, of course, a possibility of unfair advantage to an opponent by the admission of further evidence after the close of a case, but the trial court may in its discretion sanction such evidence's admission. *Blewett v. Gaynor* (1890), 77 Wis. 378, 46 N. W. 547; 6 Wigmore, *Evidence,* p. 520, sec. 1877.

This rule is stated in *McGowan v. Chicago & N. W. Ry.* (1895), 91 Wis. 147, 153, 64 N. W. 891, "The general rule is that after the evidence of the defendant is closed the plaintiff will be confined to rebutting evidence, and will not be allowed to produce original or direct evidence on his part, or go into his original case again; but the rule is not inflexible, and the court may, in its discretion, allow or refuse to receive such evidence." In an earlier case, *Humphrey v. State* (1891), 78 Wis. 569, 47 N. W. 836, a criminal case, the rule was followed. There, the complaining witness had testified she was begotten with child on June 25, 1888, and after the state had rested and the defense had put in part of its testimony, counsel for the prosecution informed the court the complaining witness desired to correct her testimony as to such date and was thereupon allowed to do so. She testified that after hearing the testimony on the part of the defense she had concluded that she had not correctly stated the date of the intercourse. As recently as in *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 146 N. W. 2d 801, we stated the rule laid down in *McGowan* was in the interest of justice. If in the interest of justice a plaintiff can correct testimony given on direct after he closes his case, defendant Diener, after resting, may correct the testimony he gave in his defense. It is not an abuse of discretion after the close of the party's case to allow him to correct his testimony in a material respect whether that testimony goes to rebuttal or to direct testimony. The stated purpose, if believed by the court, of correcting

testimony is sufficient upon which to exercise its discretion to admit the testimony in the interest of justice. Whether the second statement or the original testimony is true is for the trier of fact to decide unless the falsity of the second statement is so apparent that to admit the testimony would be an abuse of discretion.

Hare's objection to the testimony because it was based on a test made by Diener with a car different than that involved in the accident is without substantial merit. The slight dissimilarity of conditions in the test for the purpose was not important. What Diener was attempting to do was to evaluate speed of an automobile while leaving the highway and from that estimate by comparison his speed just before the accident. The evaluation of speed does not necessarily depend upon the exact conditions or car prevailing at the time of the accident. This is not a case of *Keplin v. Hardware Mut. Casualty Co.* (1964), 24 Wis. 2d 319, 129 N. W. 2d 321, 130 N. W. 2d 3, where ultimate facts were attempted to be proved by noncomparable tests. This case is more like reenacting the accident to refresh one's memory which was allowed in *Berg v. De Greef,* ante, p. 226, 155 N. W. 2d 7. Whether such tests are of any probative value as a foundation for sensory testimony is a matter of credibility. We hold the trial court did not abuse its discretion in allowing Diener to correct his testimony given on his direct and cross-examinations shortly after he had closed his case and before submission to the jury.

*By the Court.*—Judgment affirmed.